**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| **BRAVO BRIO RESTAURANTS, LLC,** | **Case No. 6:25-bk-05224-LVV** |
| | *Lead case* |
| | *Jointly Administered with* |
| **BRAVO (LOUISVILLE), LLC,** | **Case No. 6:25-bk-05225-LVV** |
| **BRIO (CHERRY HILL), LLC,** | **Case No. 6:25-bk-05226-LVV** |
| **BRIO (IRVINE), LLC,** | **Case No. 6:25-bk-05227-LVV** |
| **BRIO (TEXAS), LLC,** | **Case No. 6:25-bk-05228-LVV** |
| **Debtors.** / | |

> **THE DEBTOR RESPECTFULLY REQUESTS THAT AN EMERGENCY HEARING ON THE RELIEF REQUESTED IN THIS MOTION BE HELD ON WEDNESDAY, AUGUST 27, 2025, AT 3:00 P.M.**

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY**
**TO OBTAIN POST-PETITION FINANCING AND GRANTING**
**LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,**
**AND TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION**

**BRAVO BRIO RESTAURANTS, LLC**, as debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby files this emergency motion (this "Motion") requesting entry of interim and final orders granting the Debtor to obtain debtor-in-possession secured post-petition financing from GPEE Lender, LLC as the lender (the "DIP Lender") in the interim amount of $1,000,000 and with a maximum aggregate amount of $3,500,000 (the "DIP Loan") and use cash collateral under the terms and conditions set forth on the Term Sheet[1] attached as **Exhibit A** and incorporated herein by reference. In support of its Motion, the Debtor respectfully states as follows:

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Term Sheet attached as **Exhibit A**.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein include sections 105, 361, 362, 363, 364, 507, and 552 of the Bankruptcy Code, Bankruptcy Rule 4001(b)-(d), and Local Rule 2018-1(g)(2).[2]

## BACKGROUND

### A.      The Bankruptcy Case

3.      On August 18, 2025 (the "Petition Date"), the Debtor and its Affiliated Debtors (together, the "Debtors")[3] each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

4.      No trustee or examiner has been appointed, and the Debtor continues to operate its businesses and manage its property as a debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5.      For a detailed description of the Debtor and its operations, the Court and parties in interest are respectfully referred to the *Joint Chapter Case Management Summary* (Doc. No. 3).

### B.      The Debtor's Prepetition Secured Debt

6.      As of the Petition Date, the Debtor was indebted to GPEE LENDER, LLC, which is also the DIP Lender, in the approximate amount of $27 million, plus interest and fees, under the

---

[2] "Bankruptcy Code" refers to 11 U.S.C. §§ 101–1532 (2025); "Bankruptcy Rules" refers to Fed. R. Bankr. P. (2025); "Local Rules" refers to Bankr. M.D. Fla. R. (2025).

[3] The Affiliated Debtors and their cases are: *In re: Bravo (Louisville), LLC*, Case No: 6:25-bk-05225; *In re: Brio (Cherry Hill), LLC*, Case No: 6:25–bk–05226; *In re: Brio (Irvine), LLC*, Case No: 6:25-bk-05227; and *In re: Brio (Texas), LLC*, Case No: 6:25-bk-05228.

terms of those certain promissory notes dated June 11, 2020, July 29, 2024 and October 7, 2024, which are secured by substantially all assets of the Debtor, including Cash Collateral (the "Prepetition Secured Claim").

## C.    Cash Collateral

7.    Since the Petition Date, the Debtor has had consensual interim use of Cash Collateral without the necessity of a formal cash collateral order based on its agreement with GPEE Lender, LLC, which is also the DIP Lender.

8.    The terms of the DIP Loan provide for the Debtor's continual consensual use of the DIP Lender's Cash Collateral pursuant to the terms provided for in the Term Sheet.

## <u>MATERIAL TERMS OF THE DIP LOAN</u>

9.    The following chart contains a summary of the material terms of the proposed DIP Loan in accordance with Bankruptcy Rule 4001 and Local Rule 2081-1(g)(2):

| Rule | Summary of Material Terms |
|---|---|
| **Parties to the DIP Loan** | **Borrower:** Bravo Brio Restaurants, LLC, as debtor-in-possession in this Chapter 11 case (the "Debtor" or "Borrower")<br><br>**DIP Lender:** GPEE Lender, LLC<br><br>**Relationship of the DIP Lender to any of the parties:** The DIP Lender is the Debtor's senior secured prepetition lender with an interest in Cash Collateral. The DIP Lender is also an affiliate of the Debtor's sole member, Bravo Brio Holdings, LLC. |
| **Amount** | A revolving loan in the aggregate amount of up to $3,500,000.00 (the "DIP Loan") to meet the Debtor's cash demand. The interim amount of the DIP Loan is $1,000,000 (the "Interim Amount"). |
| **DIP Loan Documents** | The DIP Loan Documents shall be comprised of: (i) DIP Term Sheet attached hereto as **<u>Exhibit A</u>**; (ii) mutually acceptable loan documentation, incorporating substantially all of the terms and conditions outlined in the Term Sheet, and which shall be consistent with the terms of this Motion, the Term Sheet, and the DIP Orders (defined below). |

| Rule | Summary of Material Terms |
|---|---|
| **DIP Orders** | The DIP Loan and use of Cash Collateral are subject to and conditioned on the entry of the following orders (together, the "DIP Orders"):<br><br>(i)   an interim order ("Interim Order") of the Bankruptcy Court approving $1 million of the DIP Loan and the use of Cash Collateral, substantially similar in form to **Exhibit B**; and<br>(ii)   a final order (the "Final Order") of the Bankruptcy Court approving the DIP Loan in its entirety, which will be submitted in advance of the final hearing on the relief requested in this Motion. |
| **Use of Funds and Approved Budgets** | The Debtor's use of the DIP Loan proceeds and Cash Collateral require approval an interim budget for the Interim Amount (the "Interim Budget") and a final budget for the aggregate amount of the DIP Loan (the "Final Budget") (together, the "Budgets").<br><br>The Interim Budget is attached as **Exhibit C** and incorporated herein by reference.<br><br>Subject to a variance of 5%, the Budgets will detail the Debtor's use the DIP Loan proceeds and Cash Collateral which will fund its cash needs, including, among other things, the following: (i) operational costs, including payroll, rent, and utilities; (ii) purchase of inventory and supplies required for its business; (iii) payment of monthly Interest and Costs due to the DIP Lender; and (iv) administrative costs for this Chapter 11 case.<br><br>The DIP Loan draws shall be funded into the Debtor's DIP operating account at City National Bank of Florida on a weekly basis at the sole discretion of DIP Lender, pursuant to pay applications and related documents submitted to DIP Lender by the Debtor, and the amounts in the account that may be drawn out during each week will be limited to the maximum amount of DIP Loans projected to be utilized during such week in accordance with the Budgets.<br><br>The Debtor is required to provide detailed certified variance reports to the DIP Lender withing ten (10) days after the end of each month.<br><br>The Debtor's use of these funds is also subject to the limitations set forth in the Term Sheet's "Use of Proceeds" provision. |
| **Term** | The DIP Loan would be repaid in full, and the Commitment would terminate on, the earliest to occur of the following (the "Maturity Date"):<br><br>(i)   December 31, 2025;<br>(ii)   the date the Bankruptcy Court enters an order converting the bankruptcy case of the Debtor to a chapter 7 liquidation, dismissing the bankruptcy case of the Debtor, or appointing a trustee; |

| Rule | Summary of Material Terms |
|---|---|
| | (iii) the occurrence of an Event of Default under the DIP Loan Documents that is not cured as provided therein; or<br><br>(iv) the sale or refinancing of all or substantially all of the Debtor's Property (as defined in the Term Sheet) |
| **Interest Rate** | The DIP Loan will accrue interest at a fixed rate of 8.00% per annum, which shall be paid on a monthly basis in arrears from the proceeds of the DIP Loan.<br><br>During the continuance of an Event of Default that is not cured, the DIP Loan and all other outstanding obligations will bear interest at 18% per annum as allowed under applicable Florida and Federal law. |
| **Liens and Priorities** | All obligations under the DIP Facility shall at all times be:<br><br>(i) entitled, pursuant to Section 364(c)(1) of the Bankruptcy Code, to superpriority administrative claim status having priority over any and all other administrative claims (the "DIP Admin Claim");<br><br>(ii) secured, pursuant to Section 364(d) of the Bankruptcy Code, by a perfected first priority, priming, senior lien on all now–owned or after-acquired Property (as defined below) of Borrower (the "DIP Liens"). |
| **Fees** | The DIP Loan does not require any loan or closing fees. |
| **Adequate Protection** | As adequate protection for the use of its Cash Collateral, which secures the Prepetition Secured Claim, and subject only to the liens and security interests securing the DIP Loan, DIP Lender shall be granted, effective as of the Petition Date, valid and automatically perfected first priority continuation and also replacement liens and security interests in and upon all now-owned or after acquired Property for the diminution of the value of its prepetition collateral (collectively with the DIP Collateral, the "Collateral") from and after the Petition Date for any reason ("Collateral Diminution").<br><br>As adequate protection for the use of its Cash Collateral, the DIP Lender is also granted superpriority administrative claims and all of the other benefits and protections allowable under Bankruptcy Code § 507(b), junior only in right to any superpriority administrative claims granted to the DIP Lender on account of the DIP Loan to secure any Collateral Diminution. |
| **Chapter 11 Milestones** | The Debtor shall achieve the following milestones the failure of which shall constitute an Event of Default under the DIP Loan:<br><br>(i) An Interim Order approving $1 million of the DIP Loan and the use of Cash Collateral shall be entered on or before September 5 2025, on the terms and conditions contained herein and |

| Rule | Summary of Material Terms |
|---|---|
| | otherwise in form and substance acceptable to DIP Lender in its sole discretion; and <br><br> (ii) A final hearing on the approval and entry of a Final Order (on the terms and conditions contained herein and otherwise in form and substance acceptable to DIP Lender in its sole discretion) approving the DIP Loan and the DIP Facility Documents on a final basis shall be conducted by September 19, 2025, or as soon thereafter as the Bankruptcy Court's calendar permits, and a Final Order shall be entered promptly thereafter, because of cash constraints on or before September 19, 2025. |
| **DIP Lender's Attorney's Fees and Costs** | All fees, costs, and expenses, including attorneys' fees and expenses, due at any time under the DIP Financing Documents or the Prepetition Agreement that are incurred as a result of the Debtor's Cases (collectively, the "Costs"), may be charged by GPEE and shall be paid by the Debtor out of the Cash Collateral or out of the DIP Loan, on a monthly basis. The Debtor shall be authorized and directed to pay such Costs without GPEE or GPEE's counsel having to file any further application with the Court for approval or payment or comply with the U.S. Trustee's guidelines; *provided however,* each such professional shall provide summary copies of its invoices (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to the Official Committee if one is appointed (collectively, the "Review Parties"). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "Review Period"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtor shall promptly pay such invoices following the expiration of the Review Period. If an objection is received within the Review Period from the Review Parties, the Debtor shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of the Court. |
| **Release and Indemnification** | The Debtor shall release, indemnify, and hold harmless the DIP Lender in accordance with the terms and conditions set forth in the Term Sheet. |
| **Waivers** | The Interim Order and Final Order shall provide customary waivers in favor of the DIP Lender, including waivers of (i) automatic stay in |

| Rule | Summary of Material Terms |
|------|---------------------------|
|      | connection with the DIP Lender's enforcement of remedies upon an Event of Default, subject in all events to filing a motion and obtaining an order of the Bankruptcy Court in connection therewith, (ii) any surcharge of costs or expenses with respect to the DIP Lender's interest in the Collateral under Sections 506(c) and 552 of the Bankruptcy Code, and (iii) the equitable doctrine of marshaling. |

10.    The description of the DIP Loan contained herein is intended as a summary only and is qualified in its entirety by reference to the DIP Loan Documents, including the attached Term Sheet, and the DIP Orders. To the extent there is any inconsistency between the language of the DIP Loan Documents and the DIP Orders and the description thereof set forth in this Motion, the DIP Loan Documents and the DIP Orders shall control any such inconsistency.

**RELIEF REQUESTED AND GROUNDS FOR RELIEF**

11.    Section 364 of the Bankruptcy Code allows a debtor to: (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, a bankruptcy court may authorize the obtaining of credit or the incurring of debt, the repayment of which is entitled to superpriority administrative expense status or secured by a lien on unencumbered property, or combination of the foregoing.

12.    As detailed herein, the need for the Debtor to obtain post-petition financing is critical to its ability to continue operations and successfully reorganize, and the Debtor has been unable to locate financing on a fully unsecured basis.

13.    The Debtor is therefore seeking to provide the DIP Lender with: (a) an allowed superpriority administrative expense claim pursuant to 11 U.S.C. §§ 364(c)(1) (the "DIP Admin

Claim"); and (b) valid, enforceable, non-avoidable and fully perfected liens (the "DIP Liens"), pursuant to § 364(d), on all DIP Collateral.

14.     The Debtor is also seeking authority to use Cash Collateral and to provide adequate protection against the post-petition diminution in value of GPEE's respective liens and security interests in its prepetition collateral, including Cash Collateral, in the form of first priority continuation and replacement liens and security interests in and upon all now-owned and after acquired Property and superpriority administrative claims.

## A.     The Debtor's Need for the DIP Loan

15.     The Debtor requires immediate access to the DIP Loan to satisfy near-term and long-term expenses critical to the business and its Chapter 11 efforts, which, in turn, will preserve and maximize the value of the Debtor's estate. The Debtor is unable to generate sufficient levels of operating cash flow in the ordinary course of business to cover its operational costs and the projected administrative costs of this Chapter 11 case absent immediate funding.

16.     The Debtor requires the funding available from the DIP Loan to, among other things, fund working capital, meet payroll obligations, pay rent, pay suppliers, cover overhead costs, and make any other payments that are essential for the continued management, operation, and preservation of the Debtors' business. The ability to make these payments when due is essential to the continued operations of the Debtor's business during the pendency of this Chapter 11 case.

17.     If the Debtor cannot quickly access the DIP Loan, based on its financial forecasts and the Interim Budget attached as **Exhibit C**, the Debtor will not be able to operate their business in the ordinary course until the hearing on the Final Order. In turn, this would negatively impact the Debtor's revenue, jeopardize confidence in the Debtor's business, and harm the value of the Debtor's bankruptcy estate to the detriment of its creditors.

18.     In accordance with the Budgets, the liquidity provided by the DIP Loan should allow the Debtor to meet its post-petition obligations, thereby avoiding any future disruptions from supplies, and allowing the Debtor to focus on its overall reorganization efforts and plan.

19.     As such, absent immediate access to the DIP Loan, the Debtor could (a) face additional interruptions of its business; (b) lose the support of key constituencies, including the Debtor's workforce, landlords, and customers; and (c) be forced to significantly modify, reduce, or shut down entirely, its business operations.

20.     To avoid those outcomes, it is imperative that the Debtor has access to the DIP Loan beginning in August 2025, in order to signal to the Debtor's key counterparts, including its employees, landlords, vendors, and customers, that, despite commencement of this case, the outlook for the Debtor is strong, and that it has the liquidity necessary to meet its obligations in the ordinary course until the business is able to emerge from the Chapter 11 process.

**B.     The DIP Loan Is the Only Financing Available to the Debtor**

21.     The Debtor is unable to find alternative financing on an unsecured basis without administrative priority. Bankruptcy courts recognize that the appropriateness of a proposed post-petition financing facility must be considered considering the current market conditions. *See In re Lyondell Chem. Co.,* No. 09-10023 (Bankr. S.D.N.Y. 2009). Indeed, courts often recognize that where there are few lenders likely able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988). Rather, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources available under Section 364(a) and (b). *See In re Plabell Rubber Prods., Inc.,* 137 B.R. 897, 899-900 (Bankr. N.D. Ohio 1992).

22.     Despite its diligent efforts in seeking unsecured lending, the Debtor has been unable to secure debtor-in-possession financing from any source other than the DIP Lender. Accordingly, the Debtor submits that the DIP Loan represents the best and only terms available to the Debtor for post-petition financing.

**C.     Good Faith**

23.     The Debtor and the DIP Lender have negotiated the terms and conditions of the proposed DIP Loan in good faith, the terms and conditions of such loan are fair and reasonable and are supported by reasonably equivalent value. Any credit extended by the DIP Lender pursuant to the terms of this Motion will have been extended in "good faith" (as that term is used in 11 U.S.C. § 364(e)).

**D.     Request for Waiver of Stay**

24.     The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."

25.     As set forth above, the DIP Loan is essential to prevent considerable damage to the Debtor's operations. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

26.     Upon entry of a non-appealable order approving the Motion, the Debtor agrees that the automatic stay of Bankruptcy Code § 362 shall be modified to allow the DIP Lender and the Debtor to consummate this DIP Loan.

**E.     Interim Approval and Irreparable Harm**

27.     Bankruptcy Rule 4001 provides that a final hearing on a motion to obtain post-petition financing may not be commenced earlier than fourteen (14) days after the service of such

motion. Upon request, however, the Court is empowered to conduct a preliminary, expedited hearing on the motion and to authorize the proposed debtor-in-possession financing to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

28.     The Debtor has an urgent and immediate need for cash to continue to operate.

29.     Absent access to the DIP Loan, the Debtor will have no ability to meet its ongoing obligations to suppliers, vendors, employees, landlords, and other creditors. If the Debtor is unable to pay its ongoing obligations, it will not be able to operate. In contrast, the Debtor's access to the DIP Loan will ensure that the going concern value of its assets is preserved, a value substantially greater than the value which would be realized if the Debtor were forced to cease operations immediately due to a lack of liquidity.

30.     Accordingly, the Debtor requests that the Court conduct a preliminary hearing on this Motion **on or before August 27, 2025,** and authorize the Debtor, from the entry of an interim DIP Order until the Final Hearing, to use Cash Collateral and obtain credit pursuant to the DIP Facility to the extent necessary to avoid immediate and irreparable harm to its estate.

31.     The Debtor further requests that the Court schedule the Final Hearing and authorize the Debtor to mail a copy of the Interim Order when entered by the Court, which fixes the time and date of the Final Hearing and the deadline for the filing of objections to this Motion and the entry of the Final Order. The Debtor requests that the Court find that such notice of the Final Hearing is sufficient notice under Bankruptcy Rules 2002 and 4001.

**F.     Notice**

32.     No trustee or examiner has been appointed in this case. Notice of this Motion has been given by (i) the Court's CM/ECF Transmission to Counsel for the Committee and the Office of the United States Trustee for the Middle District of Florida, and (ii) United States first class mail to the Debtor, the DIP Lender, all known secured creditors of the Debtor, all parties listed on

the Local Rule 1007-2 Parties in Interest List for this case (including the twenty (20) largest unsecured creditors of the Debtor), and certain other parties.

33.    The Debtor submits that, given the nature of the relief requested herein, no other or further notice need be given. Accordingly, the Debtor requests that the Court enter an order finding that such notice of this Motion is adequate and sufficient and complies with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court. The Debtor submits that, given the emergency nature of the relief requested herein, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that this Court enter an Interim Order substantially in form to **Exhibit B** and a Final Order granting this Motion and: (i) authorizing the Debtor obtain post-petition financing in the Interim Amount of $1,000,000 and up to the maximum aggregate amount of $3,500,000; (ii) approving the Interim Budget attached as **Exhibit C**; (iii) authorizing the Debtor's use of the DIP Loan proceeds and Cash Collateral; (iv) granting the DIP Admin Claim and DIP Liens in favor of the DIP Lender; (v) waiving the notice and stay periods provided for in Bankruptcy Rules 4001 and 6004; and (vi) granting such other and further relief as may be just and proper.

**RESPECTFULLY SUBMITTED** this 25th day of August 2025.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Telephone: 407-337-2060
*Attorneys for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 25, 2025, a true and correct copy of the foregoing *DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING AND GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION*, along with any exhibit(s), has been uploaded for filing with the Clerk of Court in the above-referenced bankruptcy case via the Court's CM/ECF system, which will furnish an electronic Notice of Filing to all parties in interest receiving CM/ECF electronic noticing, including the following, who are registered to receive electronic notices in this case: UNITED STATES TRUSTEE – ORL (USTP.Region21.OR.ECF@usdoj.gov); U.S. TRUSTEE c/o Jill E. Kelso, Esq. (jill.kelso@usdoj.gov); GPEE Lender, LLC c/o Kenneth D. Herron, Jr., Esq. (chip@herronhilllaw.com).

I FURTHER CERTIFY that August 25, 2025, I caused a true and correct copy of the foregoing to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to:

| | |
|---|---|
| THE PARTIES LISTED ON THE ATTACHED MAILING LIST(S). | DEBTORS ATTN: MR. THOMAS AVALLONE, PRES/MGR 4700 MILLENIA BLVD, STE 400 ORLANDO, FL 32839 |
| GPEE LENDER, LLC C/O NEUKAMM, MICHAEL, REGISTERED AGENT 301 E. PINE STREET, STE 1400 ORLANDO, FL 32802 | GPEE LENDER, LLC C/O HERRON HILL LAW GROUP, PLLC P. O. BOX 2127 ORLANDO, FLORIDA 32802 |

/s/ R. Scott Shuker
R. Scott Shuker

Exhibit "A"

**BRAVO BRIO RESTAURANTS, LLC SUMMARY OF TERMS AND CONDITIONS FOR UP TO $3,500,000.00 IN PRIMING SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION FINANCING AND USE OF CASH COLLATERAL**

The following describes the terms of certain debtor-in-possession financing ("DIP Facility") to be provided to BRAVO BRIO RESTAURANTS, LLC filed under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") styled In re: Bravo Brio Restaurants, LLC, Case No. 6:25-bk-05224-LVV pending in the Bankruptcy Court (the "Chapter 11 Case") and to use DIP Lender's cash collateral ("Cash Collateral"). This term sheet (the "Term Sheet") and DIP Lender's (as defined below) commitment and other obligations hereunder are subject to satisfaction or waiver (by DIP Lender in its sole discretion) of the following: (i) the preparation, execution and delivery of mutually acceptable loan documentation, which shall take the form of this Term Sheet and that certain Debtor-in- Possession Secured Promissory Note, incorporating substantially all of the terms and conditions outlined in this Term Sheet (the "DIP Facility Documents"); (ii) the accuracy and completeness of all representations that Debtor (as defined below) makes to DIP Lender and all information that has been furnished to DIP Lender; (iii) Debtor's compliance with the terms of this Term Sheet; and (iv) the other conditions set forth in this Term Sheet or referred to in Appendix I. Except as expressly provided in any binding written agreement the parties may enter into in the future, upon approval of the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"), no past, present or future action, course of conduct, or failure to act relating to the transactions or proposals referred to in this Term Sheet or relating to the negotiation of the terms of such transactions or proposals shall give rise to or serve as the basis for any obligation or other liability on the part of DIP Lender other than as set forth herein. The terms and conditions set forth herein are mutually dependent on each other, and DIP Lender shall not be obligated to extend credit or consent to the use of Cash Collateral unless agreement with Debtor and approval by the Bankruptcy Court is obtained with respect to such terms and conditions as a whole.

| Bravo Brio Restaurants, LLC | Bravo Brio Restaurants, LLC, as a debtor and debtor in possession ("Debtor" or "Borrower") in the Chapter 11 filed on August 18, 2025 (the "Petition Date") |
|---|---|
| GPEE Lender, LLC | "DIP Lender" |
| Prepetition Secured Claim | GPPE Lender, LLC in its capacity as lender extended loans to Debtor and its affiliated entities pursuant to those certain promissory notes dated June 11, 2020, July 29, 2024 and October 7, 2024, which are secured by substantially all assets of the Debtor. The "Prepetition Secured Claim" of GPEE Lender, LLC is approximately $27 million plus interest and fees. |

| | |
|---|---|
| Amount | The DIP Facility shall comprise a revolving loan in an aggregate amount of up to $3,500,000.00 (the "DIP Loan"), to meet Debtor's cash demands. |
| Approved Budget and Use of Cash Collateral | Debtor shall use Cash Collateral and up to $3,500,000.00 of the DIP Loan to fund its cash needs as set forth in that certain estimated budget (to be attached to any motion to approve this agreement) (the "Budget"). <br><br> The DIP Loan draws shall be funded into Borrower's existing DIP account maintained at City National Bank of Florida on a weekly basis at the sole discretion of DIP Lender, pursuant to pay applications and related documents submitted to DIP Lender by Borrower, and the amounts in the account that may be drawn out during each week will be limited to the maximum amount of DIP Loans projected to be utilized during such week in accordance with the Budget. <br><br> The DIP Loan and use of Cash Collateral are subject to and conditioned on the entry of (i) an interim order ("Interim Order") of the Bankruptcy Court approving $1 million of the DIP Loan and the use of Cash Collateral, (ii) a final order (the "Final Order") of the Bankruptcy Court approving the DIP Loan in its entirety, and (iii) the Interim Order and Final Order approving the use of Cash Collateral, on the terms and conditions contained herein and otherwise acceptable to the DIP Lender in its sole discretion. <br><br> Borrower shall provide a variance report/reconciliation (the "Budget Variance Report") within ten (10) days after the end of each month for the immediately preceding month: (i) showing by line item actual cash receipts, disbursements, professional fees, capital expenditures, and billings for the immediately preceding period or periods, including on a cumulative basis on and after the entry of the Interim Order and Final Order, noting therein all variances, on a line-item basis, from amounts set forth for such period in the Approved Budget, and shall include explanations for any variance in the amount of 5% for such week from the Approved Budget; and (ii) certified by a responsible officer of Borrower. Borrower's actual cash expenditures for any line item during the period of the Approved Budget may exceed the corresponding budgeted amounts for that item under the Approved Budget, if Borrower is able to reduce and transfer the amounts budgeted under a separate line item to cover such excess. |
| Priority Liens and Super-priority claim for DIP Facility | All obligations under the DIP Facility shall at all times: |

(i)     be entitled, pursuant to Section 364(c)(1) of the Bankruptcy Code, to superpriority administrative claim status having priority over any and all other administrative claims (the "DIP Admin Claim");

(ii)    be secured, pursuant to Section 364(d) of the Bankruptcy Code, by a perfected first-priority, priming, senior lien on all now-owned or after-acquired Property (as defined below) of Borrower (the "DIP Liens").

For purposes hereof, "Property" shall mean collectively all real and personal property of Debtor, whether tangible or intangible, including, without limitation, (i) all cash, money, cash equivalents, deposit accounts, securities accounts, accounts, other receivables, chattel paper, contract rights, goods and inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles of any kind, rights to the payment of money, supporting obligations, guarantees, general intangibles, letter of credit rights, commercial tort claims, causes of action and all substitutions, books and records related to the foregoing, and accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (ii) all owned real property, all leased real property, all leasehold interests, all rents and leases from any real property interests, and all other proceeds of real property; (iii) subject to the entry of the Interim Order and Final Order, rights under Section 506(c) and Section 552 of the Bankruptcy Code and (iv) all proceeds of the foregoing (collectively, the "DIP Collateral"). For the avoidance of doubt, the DIP Collateral shall include all the foregoing rights, property, claims, and interests, without regard as to whether such rights, property, claims, and interests came into Debtor's estate, or otherwise arose, after the Petition Date. The DIP Collateral subject of the DIP Liens securing the DIP Loan and the DIP Admin Claim set forth above shall not include any claims and causes of action available to Debtor or the estate through the exercise of the powers granted pursuant to Chapter 5 of the Bankruptcy Code ("Avoidance Actions"), or the proceeds of Avoidance Actions. All of the DIP Liens described herein with respect to the DIP Collateral shall be deemed effective and perfected by the entry of the Interim Order and the Final Order and without the necessity or filing of the execution of mortgages, security agreements, pledge agreements, financing statements, control agreements, or other agreements.

| | |
|---|---|
| Adequate Protection | As adequate protection for the use of its Cash Collateral, which secures the Prepetition Secured Claim, and subject only to the liens and security interests securing the DIP Loan, DIP Lender shall be granted, effective as of the Petition Date, valid and automatically perfected first priority continuation and also replacement liens and security interests in and upon all now-owned or after acquired Property for the diminution of the value of its prepetition collateral (collectively with the DIP Collateral, the "Collateral") from and after the Petition Date for any reason ("Collateral Diminution").<br><br>As adequate protection for the use of its Cash Collateral, the DIP Lender is also granted superpriority administrative claims and all of the other benefits and protections allowable under Bankruptcy Code § 507(b), junior only in right to any superpriority administrative claims granted to the DIP Lender on account of the DIP Loan to secure any Collateral Diminution |
| DIP Closing Date | The date on or after the entry of the Interim Order and Final Order on which the "Conditions to DIP Closing" described in Appendix I hereto have been satisfied or waived by DIP Lender (the date of such closing, the "DIP Closing Date"). |
| Maturity | The DIP Loan shall be repaid in full, and the Commitment shall terminate, on the earliest to occur (the "Maturity Date") of (i) on December 31, 2025 (ii) the date the Bankruptcy Court enters an order converting the bankruptcy case of Debtor to a Chapter 7 liquidation, dismissing the bankruptcy case of Debtor, or appointing a trustee; (iii) the occurrence of an Event of Default under the DIP Facility Documents that has not been cured as provided herein; or (iv) the sale or refinancing of all or substantially all of Debtor's Property. |
| Use of Proceeds | Subject to the terms and conditions herein, the Cash Collateral and the proceeds of DIP Loan will be used in accordance with the terms of the Budget.  No portion of Borrower's Cash Collateral, the DIP Loan, or the Collateral shall be used (a) to pursue (i) any action adverse to interests of DIP Lender; (ii) invalidate, set aside, avoid, subordinate DIP Lien, Interim Order or Final Order; (iii) for monetary, injunctive or other affirmative relief against DIP Lender; (iv) preventing, hindering, delaying DIP Lender's exercise of any right or remedy; (b) for objecting to, contesting, interfering with DIP Lender's enforcement or realization upon any Collateral once an Event of Default occurred; (c) using, selling or disposing of Collateral without consent of DIP Lender; (d) objecting to or challenging liens or interest held by DIP Lender; (e) asserting, commencing, prosecuting any claim or cause of action, including Chapter 5 claims against DIP Lender; (f) prosecuting an objection or |

| | |
|---|---|
| | contesting the validity, priority, extent or enforceability of any other rights or interests of DIP Lender; or (g) preventing, hindering or otherwise delaying the exercise by DIP Lender of any rights and remedies granted under the Interim Order or Final Order. |
| Interest Rate | All amounts outstanding under the DIP Facility will accrue interest at a fixed rate of 8.00% per annum, which interest shall be paid on a monthly basis in arrears from the proceeds of the DIP Loan. During the continuance of an Event of Default that has not been cured as set forth herein, the DIP Loans and all other outstanding obligations will bear interest at 18% per annum as allowed under the applicable Federal and Florida law. |
| Voluntary Prepayments | The DIP Loan may be permanently prepaid in whole or in part by Borrower at any time without premium or penalty. |
| Representations | Those representations and warranties as are customary or appropriate in the context of the proposed DIP Facility (including, without limitation, organization and good standing, due authorization, all governmental approvals, taxes, all permits, insurance, compliance with regulation, etc.) or as otherwise required by DIP Lender. |
| Affirmative Covenants | The DIP Facility shall contain affirmative covenants customary or appropriate in the context of the proposed DIP Facility or as otherwise required by DIP Lender. |
| Financial Covenants | Compliance with the Approved Budget with actual results to be tested against such Approved Budget on a periodic basis at the option of DIP Lender.  Borrower shall allow DIP Lender (and its representatives, professionals and consultants) access to Debtor's premises, representatives and books and records during regular  business hours in order to assess or monitor financial performance, Approved Budget compliance and Collateral. |
| Milestones | Debtor shall achieve the following milestones,  the failure of which shall constitute an Event of Default under the DIP Facility and the use of Cash Collateral: <br> (i) An Interim Order approving $1 million of the DIP Loan and the use of Cash Collateral shall be entered on or before September 5, 2025, on the terms and conditions contained herein and otherwise in form and substance acceptable to DIP Lender in its sole discretion; and <br> (ii) A final hearing on the approval and entry of a Final Order (on the terms and conditions contained herein and otherwise in form and substance acceptable to DIP Lender in its sole |

| | |
|---|---|
| | discretion) approving the DIP Loan and the DIP Facility Documents on a final basis shall be conducted no later than September 19, 2025, or as soon thereafter as the Bankruptcy Court's calendar permits, and a Final Order shall be entered promptly thereafter, because of cash constraints on or before September 19, 2025. |
| Waivers | The Interim Order and Final Order shall provide customary waivers in favor of DIP Lender, including waivers of (i) automatic stay in connection with DIP Lender's enforcement of remedies upon an Event of Default, subject in all events to filing a motion and obtaining an order of the Bankruptcy Court in connection therewith, (ii) any surcharge of costs or expenses with respect to DIP Lender's interest in the Collateral under Sections 506(c) and 552 of the Bankruptcy Code, and (iii) the equitable doctrine of marshaling. |
| Events of Default | The DIP Facility and use of Cash Collateral shall contain the following events of default (the "Events of Default"): (i) failure to comply with the terms of the Interim Order or Final Order (including in respect of the Approved Budget as set forth herein); (ii) the obtaining of credit or the incurrence of indebtedness that is equal to or senior to the liens and claims of DIP Lender, or entitled to priority administrative status which is equal or senior to that granted to DIP Lender herein; (iii) termination of DIP Lender's lien or security interest or assertion by Borrower that DIP Lender's lien is not valid or perfected; (iv) relief from stay granted (a) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral and the subsequent commencement of a foreclosure action in connection therewith, or (b) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority and the subsequent commencement of a foreclosure action in connection therewith, which liens would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of Borrower; (v) the reversal, vacatur, or modification (without the express prior written consent of DIP Lender, in its sole discretion) of the Interim Order or Final Order; (vi) dismissal or conversion of the Chapter 11 Case, or appointment of a chapter 11 trustee or examiner; (vii) the sale of any portion of Borrower's assets outside the ordinary course of business without the prior written consent of DIP Lender, in its sole discretion, or without the repayment in full of the DIP Loan in connection therewith; (viii) the granting of any motion providing for reconsideration, stay, or vacatur of the Interim Order or Final Order; or (ix) (1) Borrower's assertion in any pleading filed in any court that any provision of the Interim Order or Final Order is not valid and binding for any reason, or (2) any provision of the Final Order shall, for any reason, cease to be valid and binding without the prior written consent of DIP Lender; and (y) the |

| | |
|---|---|
| | commencement of a foreclosure action in a court of competent jurisdiction by the holder of a secured loan with a lien junior to the DIP Liens. Notwithstanding anything herein to the contrary, if DIP Lender, in its sole and absolute discretion, determines an Event of Default hereunder has occurred, then if the Event of Default is susceptible of being cured, Borrower shall have a period of five (5) calendar days from notice of such Event of Default from DIP Lender to cure (the "Cure Period") such Event of Default, provided that Borrower shall have the right to contest the assertion of such Event of Default by filing a motion before the Bankruptcy Court and all parties agreed to an expedited hearing on such motion. |
| Remedies | Immediately upon the occurrence and during the continuation of an Event of Default, DIP Lender may (i) (a) declare all obligations to be immediately due and payable, (b) declare the termination, reduction or restriction of any further Commitment, to the extent any such Commitment remains, (c) charge default interest on the sums outstanding on the DIP Loan, and (d) terminate the DIP Facility as to any future liability or obligation of DIP Lender, but without affecting any of the obligations under the DIP Facility, the liens under the DIP Facility, or post-petition administrative superpriority claim status; and (ii) declare a termination, reduction or restriction on the ability of Borrower to use any Cash Collateral (any such declaration shall be made to Debtor and the United States Trustee (if applicable)); and (iii) exercise any and all customary remedies, including, without limitation, the right to foreclose and realize on all DIP Collateral and the right to exercise any remedy available under the DIP Facility Documents, the Interim Order, the Final Order, or applicable law, subject in all events to the Bankruptcy Court's entry of an order after DIP Lender files a motion asserting such Event of Default and confirming termination of, or otherwise for relief from, the automatic stay, and the Bankruptcy Court conducts a hearing on an expedited basis or emergency basis, not more than three (3) days from the date of filing. DIP Lender shall not, by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any of its rights or remedies unless such waiver shall be in writing and signed by an authorized officer of DIP Lender. A waiver by DIP Lender of any right or remedy on any one occasion shall not be construed as a bar to or waiver of any such right or remedy which DIP Lender would otherwise have on any future occasion, whether similar in kind or otherwise. |
| Attorneys Fees and Costs | All fees, costs, and expenses, including attorneys' fees and expenses, due at any time under the DIP Financing Documents or the Prepetition Agreement that are incurred as a result of the Debtor's Cases (collectively, the "Costs"), may be charged by GPEE and shall be paid by the Debtor out of the Cash Collateral or out of the DIP Loan, on a monthly basis. The Debtor shall be |

| | |
|---|---|
| | authorized and directed to pay such Costs without GPEE or GPEE's counsel having to file any further application with the Court for approval or payment or comply with the U.S. Trustee's guidelines; *provided however,* .each such professional shall provide summary copies of its invoices (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to the Official Committee if one is appointed (collectively, the "Review Parties"). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "Review Period"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtor shall promptly pay such invoices following the expiration of the Review Period. If an objection is received within the Review Period from the Review Parties, the Debtor shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of the Court. |
| Release | Borrower will provide customary releases for any claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness or obligations related to or arising out of the DIP Loan (the "Release"). |
| Indemnity | Borrower shall be obligated to indemnify and hold harmless DIP Lender, and its officers, directors, fiduciaries, employees, agents, advisors, attorneys and representatives from and against all losses, claims, liabilities, damages, and expenses (including, without limitation, out-of-pocket fees and disbursements of counsel) in connection with any investigation, litigation or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility or the transactions contemplated in this Term Sheet |
| Governing Law | The DIP Facility Documents will provide that Borrower will submit to the non-exclusive jurisdiction and venue of the Bankruptcy Court, or in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, then in any state or federal court of competent |

| | jurisdiction in the State of Florida; and shall waive any right to trial by jury. Florida law shall govern the DIP Facility Documents except to the extent preempted by federal bankruptcy laws. |
|---|---|

The preceding summary of proposed terms and conditions is not intended to be all inclusive. Any terms and conditions that are not specifically addressed above would be subject to future negotiations with DIP Lender and comprehensive documentation of the transaction that is acceptable to DIP Lender will have to prepared.

IN WITNESS WHEREOF, the undersigned have caused this Term Sheet to be executed and delivered by their duly authorized officers, as of August ____, 2025.

**BRAVO BRIO RESTAURANTS, LLC,**
as Borrower

By:_____

Name: _____

Title: _____

**GPEE LENDER, LLC**
as DIP Lender

By:_____

Name: _____

Title: _____

9

Appendix I

Conditions to DIP Closing

Conditions to DIP Loan and Use of Cash Collateral

1. Final Order/Bankruptcy Matters.

(a)    The Bankruptcy Court shall have entered an Interim Order with respect to initial funding of the DIP Facility up to $1 million and use of Cash Collateral and a Final Order as to the entire DIP Facility and use of Cash Collateral (and no appeal thereof shall have been filed or remain pending) which Interim Order and Final Order shall be in form and substance satisfactory in the sole discretion of DIP Lender and shall be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed, vacated, appealed or subject to a stay pending appeal or otherwise challenged or subject to any challenge, provided that the Interim Order and Final Order shall in substantially the same form as the Final Order authorizing the DIP Loan.

(b)    All  orders to be entered by the Bankruptcy Court, including orders pertaining to cash management, and all other motions and documents filed or to be filed with, and submitted to, the Bankruptcy Court in connection therewith shall be in the form and substance reasonably satisfactory to DIP Lender, be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed or vacated absent prior written consent of DIP Lender.

(c)    All costs, fees, expenses (including, without limitation, reasonable legal fees) and other compensation contemplated by the DIP Facility Documents and this Term Sheet to be payable shall have been paid to the extent due and Debtor shall have complied in all respects with all of their other obligations to DIP Lender.

(d)    DIP Lender shall be satisfied that Debtor has complied with all other customary closing conditions (unless such conditions are waived by DIP Lender). Debtor and the transactions contemplated by this Term Sheet shall be in compliance with all applicable laws and regulations.

(e)    Execution and delivery by Debtor of the DIP Facility Documents evidencing the loans made and to be made under the DIP Facility;

(f)    DIP Lender shall have received the Approved Budget, any required periodic updates pursuant to the Approved Budget and any variance reports, each in form and substance satisfactory to the DIP Lender, and Debtor shall be in compliance with the Approved Budget.

(g)    The following statements shall be true and correct: (i) the representations and warranties contained in the DIP Facility Documents are true and correct in all material respects (unless otherwise qualified by materiality in which case such representations and warranties shall be true and correct in all respects) on and as of such date, as though made on and as of such date, except to the extent that any such representation or warranty expressly relates to an earlier date (in which case such representation or warranty shall be true and correct in all material respects (unless otherwise qualified by materiality in which case such representations and warranties shall be true and correct in all respects) on and as of such earlier date) and (ii) no Default or Event of Default shall have occurred and be continuing on such date, or would result from the making of such borrowing on such date.

1

    (h)    Such other conditions as are reasonably requested by DIP Lender shall have been satisfied by Debtor.

Exhibit "B"

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| **BRAVO BRIO RESTAURANTS, LLC,** | **Case No. 6:25-bk-05224-LVV** |
| | *Lead case* |
| | *Jointly Administered with* |
| **BRAVO (LOUISVILLE), LLC,** | **Case No. 6:25-bk-05225-LVV** |
| **BRIO (CHERRY HILL), LLC,** | **Case No. 6:25-bk-05226-LVV** |
| **BRIO (IRVINE), LLC,** | **Case No. 6:25-bk-05227-LVV** |
| **BRIO (TEXAS), LLC,** | **Case No. 6:25-bk-05228-LVV** |
| **Debtors.** | |
| _____/ | |

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION**
**FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING AND**
**GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS**
**AND, TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION**

| |
|---|
| **Final Hearing Set for _____, 2025, at __:__ AM/PM** |
| **Deadline for Objections is _____, 2025, at __:__ AM/PM** |

THIS CASE came on for an emergency hearing on August 27, 2025, at 3:00 p.m. (the

"Interim Hearing"), upon the *Debtor's Emergency Motion for Authority to Obtain Post-Petition*

*Financing and Granting Liens and Superpriority Administrative Expense Status, and to Use Cash Collateral and Provide Adequate Protection* (Doc. No. __) filed on behalf of the debtor-in-possession **BRAVO BRIO RESTAURANTS, LLC** (the "Debtor").

The Court, having considered the DIP Motion, the evidence submitted at the Interim Hearing, the arguments of counsel and all parties present at the Interim Hearing, and after due deliberation and consideration, finds that good and sufficient cause exists to grant the requested relief and enters this interim order ("Interim Order"). Accordingly, the Court finds and concludes as follows:

(A)   This Court has jurisdiction to consider the DIP Motion, pursuant to 28 U.S.C. §§ 157(b) and 1334. The subject matter of the DIP Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

(B)   GPEE Lender, LLC in its capacity as lender extended loans to Debtor and its affiliated entities pursuant to those certain promissory notes dated June 11, 2020, July 29, 2024 and October 7, 2024, which are secured by substantially all assets of the Debtor. The "Prepetition Secured Claim" of GPEE Lender, LLC is approximately $27 million plus interest and fees.

(C)   The Debtor represents that it has an immediate and critical need to obtain funding and continue the consensual use of Cash Collateral to avoid immediate and irreparable harm to the Debtor's estate and to allow for the orderly continuation of its business.

(D)   For purposes of this Interim Order, the term "Interim DIP Loan" means solely the credit facility authorized by his Interim Order which reflects the exclusive terms of a post-petition line of credit up to $1,000,000.00 (the "Interim Amount") through the date of the Final Hearing (set below), to be provided by GPEE LENDER, LLC (the "DIP Lender") subject to the following: (i) requests being submitted by the Debtor to the DIP Lender; (ii) the Interim Amount of the DIP

2

Loan proceeds shall be used in accordance with the Interim Budget attached hereto as **Exhibit A** (the "Interim Budget"), subject to a 5% variance, and the budgetary requirements set forth in the Term Sheet attached to the DIP Motion; (iii) the DIP Lender receiving (a) a superpriority administrative expense claim equal in priority to all allowed administrative expense claims (the "DIP Admin Claim"), (b) a perfected first priority, priming, senior lien on all now-owned or after-acquired Property[1] (the "DIP Liens"), and (c) adequate protection as provided for in the Term Sheet; and (iv) the entry of this Interim Order

(E)     The Debtor represents that it took substantial efforts to obtain a post-petition loan from other third-party lenders on terms equal to or better than the DIP Loan, and that it was unable to obtain a post-petition loan from any source other than the DIP Lender and on better terms than those described in the original DIP Motion.

(F)     The DIP Lender has agreed to provide interim post-petition financing pursuant to this Interim Order, all on the terms and subject to the conditions set forth in this Interim Order.

(G)     The terms of the Interim DIP Loan are more favorable to the Debtor than those available from alternative sources. Based upon the record before the Court and the proffers of counsel for the Debtor and for the DIP Lender at the Interim Hearing, the terms of the Interim DIP Loan and this Interim Order have been negotiated in good faith and at arm's-length between the Debtor and the DIP Lender. The funding of the Interim DIP Loan to the Debtor by the DIP Lender pursuant to this Interim Order shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in 11 U.S.C. § 364(e), and the DIP Lender shall be entitled to all protections afforded thereby.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Term Sheet attached to the DIP Motion.

3

(H)     The terms of the Interim DIP Loan and this Interim Order are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

(I)     *Adequate Protection*. GPEE Lender, LLC is entitled, pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection against the post-petition diminution in value of its respective liens and security interests in its prepetition collateral, including Cash Collateral (any such post-petition diminution, to the maximum extent permitted under the Bankruptcy Code, "*Collateral Diminution*").

(J)     The Debtor has requested immediate entry of this Interim Order so that the DIP Lender will advance funds and consent to the use of Cash Collateral (defined below) in accordance with the Interim Budget.

(K)     The interim relief granted herein to obtain the DIP Loan is necessary to avoid immediate and irreparable harm to the Debtor's estate. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors.

(L)     Notice of the Interim Hearing and the proposed entry of this Interim Order has been provided to the U.S. Trustee, the DIP Lender and its counsel, all known secured creditors of the Debtor, all parties listed on the Local Rule 1007-2 Parties in Interest List for this case, the Debtor's twenty (20) largest unsecured creditors, and certain other parties as listed in the Motion. Under these urgent circumstances, requisite notice of the Motion and the relief requested thereby and in this Interim Order has been given in accordance with Rule 4001 of the Bankruptcy Rules and Local Rule 2081-1, which notice is sufficient for all purposes and no other notice need be given for entry of this Interim Order.

Accordingly, it is **ORDERED** that:

1.      <u>Interim Grant of Motion; Authorization of Financing and Use of Cash Collateral</u>. The Motion, to the extent provided herein and the Term Sheet, is GRANTED on an interim basis and the Debtor is authorized to:

    a.      borrow up to the Interim Amount from the DIP Lender on an interim basis through the date of the Final Hearing set below, on the terms and conditions set forth in this Interim Order; and the Term Sheet;

    b.      use the DIP Lender's cash collateral as that term is defined in 11 U.S.C. §363(a) ("Cash Collateral") as set forth herein and the Term Sheet; and take and effect all actions required or necessary for its performance under the terms of this Interim Order.

2.      <u>Use of Proceeds.</u> The proceeds of the Interim Amount and Cash Collateral shall be used solely to provide funding to enable the Debtor to continue to operate in accordance with the Interim Budget**.**

3.      <u>Super Priority Administrative Expense and Liens.</u> Up to the Interim Amount, the DIP Lender shall be:

    a.      entitled, pursuant to Section 364(c)(1) of the Bankruptcy Code, to superpriority administrative claim status having priority over any and all other administrative claims (the "DIP Admin Claim"); and

    b.      secured, pursuant to Section 364(d) of the Bankruptcy Code, by a perfected priority, priming, senior lien on all now-owned or after-acquired Property (as defined below) of Borrower (the "DIP Liens").

4.      <u>Adequate Protection.</u> As adequate protection for the use of its Cash Collateral, which secures the Prepetition Secured Claim, and subject only to the liens and security interests securing the DIP Loan, DIP Lender is granted, effective as of the Petition Date, valid and automatically perfected first priority continuation and also replacement liens and security interests in and upon all now-owned or after acquired Property for  the Collateral Diminution.

As adequate protection for the use of its Cash Collateral, the DIP Lender is also granted superpriority administrative claims and all of the other benefits and protections allowable under

Bankruptcy Code § 507(b), junior only in right to any superpriority administrative claims granted to the DIP Lender on account of the DIP Loan to secure any Collateral Diminution.

5.      _Automatic Perfection_. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the DIP Lender's security interests in and liens on the Collateral granted and created hereunder, and such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted hereunder, effective as of the Petition Date, without the necessity of creating, filing, recording, or serving any financing statements, mortgages, deeds of trust, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the DIP Lender by this Interim Order

To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the DIP Lender's liens and security interests granted and created by this Interim Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court. If the DIP Lender shall elect for any reason to file any Uniform Commercial Code financing statements, mortgages, deeds of trust, or other recordable documents to further evidence perfection of their interests in property of the Debtor and its estate, the DIP Lender, or upon the request of the DIP Lender, the Debtor, is authorized and directed to execute or file, or cause to be executed or filed, all such financing statements or other documents, and the filing, recording, or service (as the case may be) of such financing statements or similar documents shall be deemed to have been made at the time of and on the Petition Date, and the

6

signature(s), if required, of any person(s) designated by the Debtor, whether by letter to the DIP Lender or by appearing on any one or more of the agreements or other documents respecting the security interests and liens of the DIP Lender granted hereunder, shall bind the Debtor and its estate. The DIP Lender may file or authorize the filing of a certified copy of this Interim Order in any filing or recording office in any county, parish, or other jurisdiction in which the Debtor is organized or has real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of this Interim Order.

6.      No Surcharge. No costs or expenses of administration which have or may at any time be incurred in this Chapter 11 case shall be charged against the DIP Lender, its claims or the Collateral pursuant to Bankruptcy Code § 506(c) without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender. The DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

7.      Bankruptcy Code Section 552(b). DIP Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender with respect to proceeds, products, offspring, rents and profits of any of the Collateral.

8.      Payment of Costs. All fees, costs, and expenses, including attorneys' fees and expenses, due at any time under the DIP Financing Documents or the Prepetition Agreement that are incurred as a result of the Debtor's Case (collectively, the "Costs"), may be charged by GPEE and shall be paid by the Debtor out of the Cash Collateral or out of the DIP Loan, on a monthly basis. The Debtor shall be authorized and directed to pay such Costs without GPEE or GPEE's counsel having to file any further application with the Court for approval or payment or comply

with the U.S. Trustee's guidelines; *provided, however,* each such professional shall provide summary copies of its invoices (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to the Official Committee if one is appointed (collectively, the "Review Parties"). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "Review Period"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtor shall promptly pay such invoices following the expiration of the Review Period. If an objection is received within the Review Period from the Review Parties, the Debtor shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court.

9.       The following are events of default (the "Events of Default"): (i) failure to comply with the terms of the Interim Order or Final Order (including in respect of the Approved Budget as set forth herein); (ii) the obtaining of credit or the incurrence of indebtedness that is equal to or senior to the liens and claims of DIP Lender, or entitled to priority administrative status which is equal or senior to that granted to DIP Lender herein; (iii) termination of DIP Lender's lien or security interest or assertion by Borrower that DIP Lender's lien is not valid or perfected; (iv) relief from stay granted (a) to allow any creditor to execute upon or enforce a lien on or security interest

4050361v1

in any Collateral and the subsequent commencement of a foreclosure action in connection therewith, or (b) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority and the subsequent commencement of a foreclosure action in connection therewith, which liens would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of Debtor; (v) the reversal, vacatur, or modification (without the express prior written consent of DIP Lender, in its sole discretion) of the Interim Order or Final Order; (vi) dismissal or conversion of the Chapter 11 Case, or appointment of a chapter 11 trustee or examiner; (vii) the sale of any portion of Borrower's assets outside the ordinary course of business without the prior written consent of DIP Lender, in its sole discretion, or without the repayment in full of the DIP Loan in connection therewith; (viii) the granting of any motion providing for reconsideration, stay, or vacatur of the Interim Order or Final Order; or (ix) (1) Borrower's assertion in any pleading filed in any court that any provision of the Interim Order or Final Order is not valid and binding for any reason, or (2) any provision of the Final Order shall, for any reason, cease to be valid and binding without the prior written consent of DIP Lender; and (y) the commencement of a foreclosure action in a court of competent jurisdiction by the holder of a secured loan with a lien junior to the DIP Liens. Notwithstanding anything herein to the contrary, if DIP Lender, in its sole and absolute discretion, determines an Event of Default hereunder has occurred, then if the Event of Default is susceptible of being cured, Borrower shall have a period of five (5) calendar days from notice of such Event of Default from DIP Lender to cure (the "Cure Period") such Event of Default, provided that Debtor shall have the right to contest the assertion of such Event of Default by filing a motion before the Bankruptcy Court and all parties agreed to an expedited hearing on such motion.

10.    <u>Remedies.</u> Immediately upon the occurrence and during the continuation of an Event of Default, DIP Lender may (i) (a) declare all obligations to be immediately due and payable, (b) declare the termination, reduction or restriction of any further Commitment, to the extent any such Commitment remains, (c) charge default interest on the sums outstanding on the DIP Loan, and (d) terminate the DIP Facility as to any future liability or obligation of DIP Lender, but without affecting any of the obligations under the DIP Facility, the liens under the DIP Facility, or post-petition administrative superpriority claim status; and (ii) declare a termination, reduction or restriction on the ability of Borrower to use any Cash Collateral (any such declaration shall be made to Debtor and the United States Trustee (if applicable)); and (iii) exercise any and all customary remedies, including, without limitation, the right to foreclose and realize on all DIP Collateral and the right to exercise any remedy available under the DIP Facility Documents, the Interim Order, the Final Order, or applicable law, subject in all events to the Bankruptcy. Court's entry of an order after DIP Lender files a motion asserting such Event of Default and confirming termination of, or otherwise for relief from, the automatic stay, and the Bankruptcy Court conducts a hearing on an expedited basis or emergency basis, not more than three (3) days from the date of filing. DIP Lender shall not, by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any of its rights or remedies unless such waiver shall be in writing and signed by an authorized officer of DIP Lender. A waiver by DIP Lender of any right or remedy on any one occasion shall not be construed as a bar to or waiver of any such right or remedy which DIP Lender would otherwise have on any future occasion, whether similar in kind or otherwise.

11.    <u>Binding Effect: Successors and Assigns.</u> The provisions of this Interim Order shall be binding upon all parties in interest in this Chapter 11 case or any superseding case, including, without limitation, the DIP Lender and the Debtor, any statutory or non-statutory committee

4050361v1

appointed or formed in this Chapter 11 case, and their respective successors and assigns, ((including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Case, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of any of the Debtor), and shall inure to the benefit of the DIP Lender and the Debtor and their respective successors and assigns. In no event shall the DIP Lender have any obligation to make any loan, permit the use of its collateral (including Cash Collateral) or extend any financing to any Chapter 7 or Chapter 11 trustee or similar responsible person appointed or elected for the estate of the Debtor in the Chapter 11 case or any superseding case.

12.     The terms of this Interim Order and under the Term Sheet, the security interests and liens granted to the DIP Lender under this Interim Order, and the rights of the DIP Lender pursuant to this Interim Order with respect to the Collateral, shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtor without the prior written approval of the DIP Lender.

13.     If any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed without the prior written agreement of the DIP Lender, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtor to the DIP Lender before the effective date of such modification, vacation, or stay or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtor to the DIP Lender before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all the liens, rights,

11

remedies, privileges, and benefits granted herein, with respect to all such indebtedness, obligations, or liabilities.

14.     Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the DIP Lender to obtain further adequate protection and other statutory protections for the use of the Collateral, and the Cash Collateral, or to seek other relief in this Case in accordance with any provision of the Bankruptcy Code or applicable law. Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections, privileges and defenses of the DIP Lender, or the Debtor afforded pursuant to the Bankruptcy Code.

15.     All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in this Interim Order by the Debtor are granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby. No obligation, payment, transfer, or grant of liens or security interests under this Interim Order to the DIP Lender shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any challenge.

16.     **Notice of Final Hearing:** The Honorable Lori V. Vaughn will conduct a final hearing on the DIP Motion on **_____, 2025, at __:__ AM/PM**. This Interim Order shall constitute adequate and sufficient notice of the Final Hearing.

     a.    All parties must attend the hearing in person. Remote appearances are only permitted in limited circumstances as set forth in the Court's *Order Regarding Attendance at Hearings* (Doc. No. 24) and Judge Vaughan's Hearing Guidelines, available at: https://www.flmb.uscourts.gov/judges/vaughan. Participants who meet the requirements to appear remotely must register no later than two business days before the hearing.

b. The Court may continue this matter upon announcement made in open court and reflected on the docket without further written notice.

17. <u>Objection Deadline</u>. Objections to the DIP Motion, this Interim Order, or the entry of a final order, shall be made in writing, filed with the Clerk of the Bankruptcy Court, and served upon counsel for the Debtor, counsel for the DIP Lender, the United States Trustee's Office, and all parties on the Local Rule 1007-2 Parties in Interest List for this case by no later than _____, **2025, at 5:00 p.m., prevailing Eastern Time** (the "Objection Deadline"). Any such objections not filed by the Objections Deadline shall be deemed waived. This Interim Order shall constitute adequate and sufficient notice of the Objection Deadline.

18. <u>Immediate Entry.</u> Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

19. <u>Reservation of Rights.</u> Except to the extent of extensions of credit made under the DIP Loan pursuant to this Interim Order, all of which shall be entitled to the protections and benefits afforded hereby, this Interim Order is without prejudice to the objections, rights, claims, interests and defenses of all parties in interest which objections, rights, claims, interests and defenses are preserved.

20. <u>Service of Order.</u> Promptly after the entry of this Interim Order, the Debtor shall mail, by first class mail postage prepaid, a copy of this Interim Order to counsel for the DIP Lender, the U.S. Trustee, all parties who have filed requests for notices under Bankruptcy Rule 2002, all parties on the Local Rule 1007-2 Parties in Interest List for this case, and all other parties entitled to notice under Bankruptcy Rule 4001(c), and shall subsequently file a certificate of service regarding same with the Clerk of the Court.

21. To the extent any provisions in this Interim Order conflict with any provisions of the DIP Motion, the provisions of this Interim Order shall control.

13

22.     The Court retains jurisdiction to enforce and interpret the terms of this Interim

Order.

### #

*Attorney R. Scott Shuker is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this Order.*

Exhibit "C"

## INTERIM BUDGET

| | | Current | | | | | |
|---|---|---|---|---|---|---|---|
| | | 8/31/2025 | 9/7/2025 | 9/14/2025 | 9/21/2025 | 9/28/2025 | 10/5/2025 |
| | | Est | Est | Est | Est | Est | Est |
| Starting Cash | | $ 2,242,029 | $ 875,624 | $ 1,086,906 | $ 82,192 | $ 2,363,495 | $ 2,172,839 |
| Deposits | | | | | | | |
| | BRIO / BRAVO | $ 2,761,843 | $ 2,879,262 | $ 2,724,680 | $ 2,954,086 | $ 3,116,643 | $ 3,050,711 |
| Total Deposits | | $ 2,761,843 | $ 2,879,262 | $ 2,724,680 | $ 2,954,086 | $ 3,116,643 | $ 3,050,711 |
| | | | | | | | |
| Payments | | | | | | | |
| | Required Payments | | | | | | |
| | Payroll | $ 1,272,650 | $ 1,006,169 | $ 1,151,213 | $ 898,771 | $ 1,185,564 | $ 933,368 |
| | Scheduled Pymts | $ - | $ - | $ - | $ - | $ 44,286 | $ 87,628 |
| | Sysco | $ 434,995 | $ 403,020 | $ 421,562 | $ 448,712 | $ 453,481 | $ 420,988 |
| | Zurich/Insurance | $ 124,129 | $ 124,129 | $ 20,000 | $ 20,000 | $ 124,129 | $ 95,000 |
| | Management Services | $ 500,000 | $ - | $ - | $ - | $ 200,000 | $ 500,000 |
| | Total Required Payments | $ 2,331,774 | $ 1,533,318 | $ 1,592,775 | $ 1,367,483 | $ 2,007,459 | $ 2,036,984 |
| | | | | | | | |
| | Other Payments | | | | | | |
| | Sales tax | $ 698,000 | $ - | $ 771,739 | $ 457,425 | $ 228,713 | $ 228,713 |
| | Rents | $ - | $ 750,000 | $ 350,000 | $ 300,000 | $ - | $ 750,000 |
| | AP/ACH | $ 415,454 | $ 380,000 | $ 380,000 | $ 380,000 | $ 380,000 | $ 380,000 |
| | Utilities | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 |
| | Tips Payable | $ 440,308 | $ 437,930 | $ 394,881 | $ 427,875 | $ 451,127 | $ 441,764 |
| | Door Dash | $ 2,711 | $ - | $ - | $ - | $ - | $ - |
| | Credit Card Fees | $ - | $ 326,732 | $ - | $ - | $ - | $ 282,449 |
| | Travel/Misc Expense | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 |
| | Total Other Payments | $ 1,696,473 | $ 2,034,662 | $ 2,036,620 | $ 1,705,300 | $ 1,199,840 | $ 2,222,925 |
| Total Disbursements | | $ 4,028,247 | $ 3,567,980 | $ 3,629,395 | $ 3,072,783 | $ 3,207,299 | $ 4,259,909 |
| | Cash Position | $ (1,266,405) | $ (688,718) | $ (904,714) | $ (118,696) | $ (90,657) | $ (1,209,198) |
| | Ending Cash | $975,624 | $186,906 | $182,192 | ($36,505) | $2,272,839 | $963,641 |
| | | | | | | | |
| | BK | | | | | | |
| | US Trustee | $ - | $ - | $ - | $ - | $ - | $ 150,000 |
| | PACA | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 |
| | Total BK | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 250,000 |
| | | | | | | | |
| | Net Cash | $875,624 | $86,906 | $82,192 | ($136,505) | $2,172,839 | $713,641 |
| | | | | | | | |
| | DIP Financing | | $1,000,000 | | $2,500,000 | | |
| | Total | $875,624 | $1,086,906 | $82,192 | $2,363,495 | $2,172,839 | $713,641 |

Label Matrix for local noticing
113A-6
Case 6:25-bk-05224-LVV
Middle District of Florida
Orlando
Mon Aug 25 15:46:35 EDT 2025

Allen ISD
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
c/o John Kendrick Turner
3500 Maple Avenue
Suite 800
Dallas, TX 75219-3959

Bravo Brio Restaurants, LLC
4700 Millenia Blvd.
Suite 400
Orlando, FL 32839-6020

Chriistiana Mall, LLC
c/o Ivan M. Gold, Esq.
Allen Matkins Leck Gamble Mallory
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4003

Christiana Mall, LLC
c/o Joaquin J. Alemany, Esq.
Holland & Knight LLP
701 Brickell Avenue, Ste 3300
Miami, FL 33131-2898

City of Allen
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
c/o John Kendrick Turner
3500 Maple Avenue
Suite 800
Dallas, TX 75219-3959

Fashion Place Anchor Acquisition, LLC
c/o Ivan M. Gold
Allen Matkins Leck Gamble Mallory
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4003

GPEE Lender, LLC
c/o Kenneth D. Herron, Jr.
Herron Hill Law Group, PLLC
P. O. Box 2127
ORLANDO, FL 32802-2127

Lennox Town Center Limited
c/o Ryan E. Davis, Esq.
Winderweedle, Haines, Ward & Woodman, PA
329 Park Avenue North, Second Floor
Winter Park, FL 32789-7421

Plaza Frontenac Acquisition, LLC
c/o Ivan M. Gold, Esq.
Allen Matkins Leck Gamble Mallory
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4003

Rancho Mall, LLC
c/o Ivan M.Gold
Allen Matkins Leck Gamble Mallory
three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4003

Tarrant County
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
c/o John Kendrick Turner
3500 Maple Avenue
Suite 800
Dallas, TX 75219-3959

ARMADA HOFFLER BLOCK & ASSOC
DIVARIS PROP MGMT
4525 MAIN ST., STE 900
VIRGINIA BEACH, VA 23462-3431

Bravo Brio Holdings, LLC
4700 Millenia Blvd.
Suite 400
Orlando, FL 32839-6020

(p)C H  ROBINSON WORLDWIDE  INC
ATTN BANKRUPTCY TEAM BILL GLAD
14701 CHARLSON ROAD
SUITE 2400
EDEN PRAIRIE MN 55347-5076

CGP-CPP PLAZA FRONTENAC LLC
P.O. BOX 86
MINNEAPOLIS, MN 55486-3110

CHRISTIANA MALL LLC
SDS-12-3026
P.O. BOX 86
MINNEAPOLIS, MN 55486-3026

Camden County Tax Collector
509 Lakeland Road
Blackwood, NJ 08012-2887

Christiana Mall, LLC
c/o Ivan M. Gold
Allen Matkins Leck Gamble Mallory & Nati
Three Embarcadero Center, 12 Floor
San Francisco, CA 94111-4003

Christiana Mall, LLC
c/o Joaquin J. Alemany, Esq.
701 Brickell Avenue, Ste. 3300
Miami, Florida 33131-2847

Collin County Tax Collector
P.O. Box 8006
McKinney, TX 75070-8006

DATADELIVERS, LLC
100 W HILLCREST BLVD
SUITE 406
SCHAUMBURG, IL 60195-3108

EASTON TOWN CENTER II  LLC
L-3769
COLUMBUS, OH 43260-3769

EDWARD DON & CO. HOLDINGS, LLC
2562 PAYSPHERE CIRCLE
Chicago, IL 60674-0001

Edward M. Fitzgerald, Esq.
Holland & Knight LLP
200 S. Orange Avenue, Suite 2600
Orlando, Florida 32801-3453

FASHION PLACE ANCHOR
ACQUISITION LLC
P.O. BOX 86
MINNEAPOLIS, MN 55486-2780

Fashion Place Anchor Acquisition, LLC
c/o Ivan M. Gold
Allen Matkins Leck Gamble Mallory & Nati
Three Embarcadero Center, 12 Floor
San Francisco, CA 94111-4003

Fashion Place Anchor Acquisition, LLC
c/o Joaquin J. Alemany, Esq.
701 Brickell Avenue, Ste. 3300
Miami, Florida 33131-2847

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

GPEE LENDER, LLC
4700 Millenia Blvd.
Suite 400
Orlando, FL 32839-6020

GREENE TOWN CENTER LLC
ATTN: OLSHAN PROPERTIES
600 MADISON AVE., 14TH FLOOR
New York, NY 10022-1657

Harris County Tax Collector
1001 Preston St.
Houston, TX 77002-1839

Internal Revenue Service
Centralized Insolvency Ops
P.O. Box 7346
Philadelphia, PA 19101-7346


Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346

Jefferson County Tax Collect
531 Court Place, 6th Floor
Louisville, KY 40202-3312

John K Turner
C/O LINEBARGER GOGGAN BLAIR & SAMPSON, L
3500 Maple Avenue
Suite 800
DALLAS, TX 75219-3959


LENNOX TOWN CENTER LIMITED
C/O Ryan E. Davis
329 Park Avenue North, Second Floor
Winter Park, FL 32789-7406

LIBERTY CENTER LLC.
7600 GIBSON RD
L-3745
COLUMBUS, OH 43260-3745

Lennox Town Center Limited
c/o Ryan E. Davis, Esq.
Winderweedle, Haines, Ward & Woodman, PA
329 Park Avenue North, Second Floor
Winter Park, Florida 32789-7421


Orange Co. Tax Collector
County Service Center
601 N. Ross Street
Santa Ana, CA 92701-4091

Orange County Tax Collector
PO Box 545100
Orlando FL 32854-5100

PFP COLUMBUS II LLC
POLARIS FASHION PLACE
L-3581
COLUMBUS, OH 43260-0001


Plaza Frontenac Acquisition, LLC
c/o Ivan M. Gold
Allen Matkins Leck Gamble Mallory & Nati
Three Embarcadero Center, 12 Floor
San Francisco, CA 94111-4003

Plaza Frontenac Acquisition, LLC
c/o Joaquin J. Alemany, Esq.
701 Brickell Avenue, Ste. 3300
Miami, Florida 33131-2847

RM MEMBER LLC.
P.O. BOX 72439
CLEVELAND, OH 44192-0002


RREEF CONTINENTAL
MASTER TRUST
P.O. BOX 209266
AUSTIN, TX 78720-9266

Rancho Mall, LLC
c/o Ivan M. Gold
Allen Matkins Leck Gamble Mallory & Nati
Three Embarcadero Center, 12 Floor
San Francisco, CA 94111-4003

Rancho Mall, LLC
c/o Joaquin J. Alemany, Esq.
701 Brickell Avenue, Ste. 3300
Miami, Florida 33131-2847


SYSCO CORPORATION
24500 Northwest Freeway
Crypress, TX 77429-2199

(p)STAPLES BUSINESS ADVANTAGE THOMAS RIGGLEMA
7 TECHNOLOGY CIRCLE
COLUMBIA SC 29203-9591

TAMPA WESTSHORE ASSOCIATES
DEPT 177001
P.O. BOX 67000
DETROIT, MI 48267-1770


TB MALL AT UTC LLC.
P.O. BOX 674647
DETROIT, MI 48267-4647

TGM CCV PROPERTY LLC
P.O. BOX 843386
DALLAS, TX 75284-3386

TGM CCV Property, LLC
c/o Wilson Friery PLLC
708 Main Street, 10th Floor
Houston, Texas 77002-3246


THE TAUBMAN REALTY GROUP
CITY CREEK CENTER ASSOC LLC
P.O.BOX 674566
DETROIT, MI 48267-4566

Tarrant County Tax Collector
100 E. Weatherford
Fort Worth, TX 76196-0206

USA HVAC, INC
6448 PARKLAND DR
SARASOTA, FL 34243-4038


WESTCOR SANTAN VILLAGE LLC
DEPT LA 25429
PASADENA, CA 91185-5429

Ryan E Davis +
Winderweedle Haines Ward & Woodman P.A.
329 Park Avenue North, Second Floor
Winter Park, FL 32789-7421

R Scott Shuker +
Shuker & Dorris, P.A.
121 South Orange Avenue, Suite 1120
Orlando, FL 32801-3238

United States Trustee - ORL +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Kenneth D Herron Jr+
Herron Hill Law Group, PLLC
P. O. Box 2127
Orlando, FL 32802-2127

Jill E Kelso +
Office of the United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801-2440

Edward M Fitzgerald +
Holland & Knight LLP
200 South Orange Ave
Suite 2600
Orlando, FL 32801-3453

Lauren L Stricker +
Shuker & Dorris, P.A.
121 S. Orange Ave
Suite 1120
Orlando, FL 32801-3238

Joaquin J Alemany +
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131-2898

Lori V. Vaughan +
Orlando
, FL

John Kendrick Turner +
Linebarger Goggan Blair & Sampson, LLP
3500 Maple Avenue
Suite 800
Dallas, TX 75219-3959

Broocks Wilson +
Wilson Friery PLLC
708 Main Street
Ste 10th Floor
Houston, TX 77002-3246

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

C.H. ROBINSON COMPANY, INC.
14701 CHARLSTON RD
SUITE 1400
EDEN PRAIRIE, MN 55347

Staples, Inc.
Staples / Shane Anderson
PO Box 102419
Columbia, SC 29224

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)TGM CCV Property, LLC

(d)GPEE Lender, LLC
c/o Kenneth D. Herron. Jr.
Herron Hill Law Group, PLLC
PO Box 2127
Orlando, FL 32802-2127

(d)Orange County Tax Collector
P.O. Box 545100
Orlando, FL 32854-5100

(d)Tarrant County
Linebarger Goggan Blair & Sampson, LLP
c/o John Kendrick Turner
3500 Maple Avenue
Suite 800
DALLAS, TX 75219-3959

End of Label Matrix
Mailable recipients    69
Bypassed recipients     4
Total                  73