**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **BRAVO BRIO RESTAURANTS, LLC,** | **Case No. 6:25-bk-05224-LVV** *Lead case* |
| | ***Jointly Administered with:*** |
| **BRAVO (LOUISVILLE), LLC,** | **Case No. 6:25-bk-05225-LVV** |
| **BRIO (CHERRY HILL), LLC,** | **Case No. 6:25-bk-05226-LVV** |
| **BRIO (IRVINE), LLC,** | **Case No. 6:25-bk-05227-LVV** |
| **BRIO (TEXAS), LLC,** | **Case No. 6:25-bk-05228-LVV** |
| **Debtors.** / | |

# DEBTORS' OPPOSITION TO INKIND'S[1] AMENDED MOTION FOR RECONSIDERATION

Debtors[2] file this opposition ("Opposition") to *inKind Cards Inc., inKind Credit Fund LP, and inKind Warehouse Facility, LLC's Amended Motion for Reconsideration* (the "Motion for Reconsideration") (Doc. No. 555), and in support thereof, states as follows.

## INTRODUCTION

Pursuant to Rule[3] 59(e)[4], inKind requests the Court reconsider its interpretation of the Limitation of Liability provision set forth in the inKind Agreement[5] and its further finding that inKind holds a claim valued at $0. inKind acknowledges that reconsideration is an "extraordinary remedy" reserved to account for an intervening change in controlling law, to consider newly available evidence, or to correct clear error or prevent manifest injustice.

[1] inKind Cards, Inc., inKind Credit Fund LP, and inKind Warehouse Facility, LLC (collectively, "inKind").
[2] Bravo Brio Restaurants, LLC, Bravo (Louisville), LLC, Brio (Cherry Hill), LLC, Brio (Irvine), LLC, and Brio (Texas), LLC (collectively, "Debtors").
[3] "Rule" means the Federal Rules of Civil Procedure. "Bankruptcy Rule" means the Federal Rules of Bankruptcy Procedure.
[4] Rule 59(e) is made applicable to this proceeding by Bankruptcy Rule 9023.
[5] Credit Purchase Agreement by and between Bravo Brio Restaurants, LLC ("BBR") and inKind, as amended (the "inKind Agreement"). The Limitation of Liability provision is set forth in Paragraph 24 of the inKind Agreement.

The Motion for Reconsideration fails to identify any change in controlling law or newly discovered evidence, and as argued below, fails to establish the Court's ruling on the Limitation of Liability provision is clear error resulting in a manifest injustice to inKind. The Opinion[6] and Confirmation Order[7] are final, carefully reasoned, and consistent with the record and the Court's prior rulings. Reconsideration would undermine finality and judicial economy and would simply rehash arguments the Court has already rejected. Because Rule 59(e) precludes a disappointed litigant, like inKind, from merely rearguing matters previously decided or to raise arguments that could have been presented before, the Motion for Reconsideration should be denied.

## **BACKGROUND**

Debtors moved to reject the inKind Agreement as an executory contract on September 5, 2025.[8] The Court, after conducting an evidentiary hearing on October 7, 2025, found the inKind Agreement was an executory contract and entered the *Order Granting Debtor's Motion to Reject InKind Agreement* (the "Rejection Order") (Doc. No. 191). Thereafter, the Court held a trial on January 27, 2026 to consider final approval of Debtors' Plan of Reorganization,[9] Debtors' Omnibus Objection to inKind's Claims,[10] inKind's Emergency Motion to Estimate Claims,[11] and inKind's Objection to Confirmation.[12] The Court heard testimony from Debtors' general counsel, Jeffrey C. Sirolly, who was examined by inKind's counsel. On March 31, 2026, the Court entered its Opinion wherein the Court estimated inKind's claims had a $0 value based on the Court's interpretation of the Limitation of Liability provision set forth in the inKind Agreement. On April

[6] *Memorandum Opinion on Approval of Debtors' Disclosure Statement, Confirmation of Debtors' Joint Plan of Reorganization and Estimation of Claims* (the "Opinion") (Doc. No. 526).
[7] *Amended Order Confirming Debtors' Second Modified Plan of Reorganization* (the "Confirmation Order") (Doc. No. 540).
[8] *Debtor's Motion to Reject InKind Agreement* (the "Motion to Reject) (Doc. No. 102).
[9] Doc. No. 400.
[10] Doc. No. 332.
[11] Doc. No. 342.
[12] Doc. Nos. 359, 380.

3, 2026, the Court entered the Confirmation Order. inKind now moves the Court to grant its Motion for Reconsideration, reconsider the Opinion and Confirmation Order, and find that as a matter of law the Limitation of Liability provision in the inKind Agreement does not limit Debtors' aggregate liability to $5,000,000.00, or, in the alternative, allow inKind to present extrinsic evidence of the parties' intent with respect to the Limitation of Liability provision. Debtors' oppose the relief sought in the Motion for Reconsideration.

## LEGAL STANDARD

Reconsideration under Rule 59 is only justified when at least one of the following grounds are present: (1) intervening change in controlling law; (2) the availability of new evidence; and (3) to correct manifest errors of law or fact.[13] Parties may not use a motion for reconsideration as an opportunity to reargue issues already decided, present new legal theories or provide another "bite at the apple" by allowing argument of issues and procedures that should have been raised before entry of an order.[14] Reconsideration should only be granted "when the movant sets forth 'strongly convincing' reasons for the Court to change its prior decision."[15]

## ARGUMENT

The Motion for Reconsideration must be denied because inKind fails to establish any of the grounds required for reconsideration under Rule 59(e).

The Motion for Reconsideration does not identify any change in controlling law. Further, the Motion for Reconsideration presents no evidence that has been newly discovered or that was previously unavailable. inKind admits it seeks reconsideration "to allow [it] to present extrinsic

---

[13] *Hallucination Media, LLC v. The Ritz Ybor, LLC (In re Hallucination Media, LLC)* No. 24-10194, 2024 WL 3898536, at *7 (11th Cir. August 22, 2024) citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).
[14] *In re Sultana Louise DeJesus*, Case No. 6:23-bk-02647-LVV, Doc. No. 130 (Bankr. M.D. Fla. April 16, 2025) citing *In re Parker,* 378 B.R. 365, 371 (Bankr. M.D. Fla. 2007).
[15] *Baumann v. PNC Bank, N.A. (In re Baumann)*, Case No.: 6:15-cv-643-Orl-40, 2016 WL 1755972, at *1 (M.D. Fla. May 3, 2016) citing *Madura v. BAC Home Loans Servicing, L.P.,* No. 8:11-cv-2511-T-33TBM, 2013 WL 4055851, at *1 (M.D. Fla. August 12, 2013).

evidence" of intent regarding the Limitation of Liability provision. This is not newly discovered evidence; it is an attempt to augment the record post-judgment. In fact, inKind's alternative request to submit extrinsic evidence confirms the point. inKind's bid to introduce evidence of negotiation redlines and AdobeSign records is an attempt to convert a post-judgment motion into a belated evidentiary hearing. The negotiation materials and testimony inKind is asking permission to present were always within inKind's possession and could have been offered earlier. Rule 59(e) does not open discovery or permit a second chance to present evidence that could have been proffered in a prior proceeding. This is not newly discovered evidence or evidence that was unavailable.

Further, even if the Court were to allow inKind to submit the foregoing extrinsic evidence as "newly discovered evidence", admission of such documents is impermissible because the inKind Agreement contains an integration clause.[16] The Limitation of Liability language is unambiguous and the parole evidence rules bars admission of extrinsic evidence that would vary or contradict this language, especially because the Integration Clause plainly states that Debtor and inKind intended the inKind Agreement itself to be the "entire agreement".[17] Each of the Sister Merchant agreements include integration clauses with language identical to the Integration Clause.

Additionally, inKind's due process claim is unfounded. inKind actively litigated Debtor's rejection of the inKind Agreement, filed an emergency motion to estimate inKind's claims, and vehemently argued against confirmation of Debtors' Plan of Reorganization. The Court properly resolved claim estimation and allowance issues as part of Confirmation. Nothing in the Motion for

[16] iKind Agreement, Section 30. "Entire Agreement. Singular and Plural. This Agreement is the entire agreement between [Debtor] and inKind regarding the subject matter of this Agreement. This Agreement supersedes all prior or contemporaneous representations, understandings, agreements, or communications between [Debtor] and inKind, whether written or verbal, regarding the subject matter of this Agreement." (the "Integration Clause").

[17] *See Yates Dev. Inc. v. Old Kings Interchange, Inc. (In re Yates Development, Inc.)*, 256 F.3d 1285, 1289-90 (11th Cir. 2001); *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998) (applying Florida law).

Reconsideration demonstrates that inKind lacked notice or an opportunity to be heard; rather, it demonstrates that inKind merely disagrees with this Court's rulings.

Furthermore, the Motion for Reconsideration should be denied because there is no manifest error of law or fact to correct. First, the Court's interpretation of the Limitation of Liability provision is correct. inKind's core contention is that the Court committed clear error interpreting the Limitation of Liability provision as a cap on Debtors' aggregate liability. But inKind's argument simply reprises points the Court already considered and rejected. The Court read the plain text of the inKind Agreement and concluded the parties intended that, upon default, Debtors would be responsible only for damages based on unredeemed credit they sold to inKind, and not that of Sister Merchants,[18] and that the liability cap aligned with that reading. The Motion for Reconsideration offers no new contractual language, no internal inconsistency the Court overlooked, and no record gap; it merely advances a competing reading of "liability" and the clause's placement. Disagreement with the Court's reasonable construction is not clear error.

Second, the Motion for Reconsideration mischaracterizes the inKind Agreement's structure and performance obligations. inKind asserts that applying a liability cap to limit recovery yields "absurd" commercial consequences and conflates performance obligations with liability. Those same contentions were weighed against inKind's Agreement's text and context at Confirmation. The Court was entitled to credit the provision's express aggregate caps and to harmonize the damages, liquidated damages, and liability provisions with the inKind Agreement's allocation of risk. inKind itself quotes the Limitation of Liability provision, which expressly sets

[18] Buca, LLC, PB Restaurants, LLC and OCS Restaurant Holding, LLC (the "Sister Merchants") as defined in the inKind Agreement at ¶ 5.h. and 5. i.

aggregate liability caps for each side, including a $5,000,000.00 cap for the Merchant and its affiliates.[19] The Court's reliance on that language is neither clearly erroneous nor unjust.

Third, the Court's determination that the inKind Agreement is an executory contract subject to Debtor's rejection does not compel a finding that inKind's claims have value. inKind argues it is inconsistent to deem the inKind Agreement executory yet estimate its claim at zero. Not so. Rejection establishes a breach as of the petition date; it does not guarantee damages or dictate their amount. The Court permissibly concluded, based on the inKind Agreement's terms and applicable caps, that inKind had no allowable damages in these cases. In the Rejection Order,[20] the Court found the inKind Agreement was executory and permitted rejection, while the later Opinion determined inKind's claims had a value of $0 in light of the Limitation of Liability provision. The Court's rulings are logically compatible and reflect contract-based limitations on recovery.

In the instant case, granting the Motion for Reconsideration and reopening the record to litigate contract interpretation would undercut finality, undermine the Debtors' confirmed Plan and would serve only to generate unnecessary administrative costs and delay recovery to creditors. inKind concedes the strong interests in finality and conservation of judicial resources governing Rule 59(e) motions. The Motion for Reconsideration presents no basis to disturb the Court's carefully considered findings integral to its Opinion and Confirmation Order.

**CONCLUSION**

Because inKind has failed to present the Court with "strongly convincing" reasons to reconsider its Opinion and Confirmation Order, and because finality and judicial economy further

---

[19] Agreement excerpts at Doc. Nos. 367–374; 422, and Exs. 25–39 ¶ 24

[20] Doc. No. 191.

compel denial, Debtors respectfully request that the Court deny the Motion for Reconsideration in its entirety.

**RESPECTFULLY SUBMITTED** this 1st day of May 2026.

*/s/ Wendy Cramer Townsend*
R. Scott Shuker
Florida Bar No.: 984469
rshuker@shukerdorris.com
Wendy Cramer Townsend
Florida Bar No.: 0517951
wtownsend@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Tel: (407) 337-2060
*Attorneys for Debtors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 1, 2026, I caused a true and correct copy of DEBTORS' OPPOSITION TO INKIND'S AMENDED MOTION FOR RECONSIDERATION to be uploaded for filing via the Court's CM/ECF system, which will furnish an electronic Notice of Filing to all parties in interest receiving CM/ECF electronic noticing, including: THE OFFICE OF THE UNITED STATES TRUSTEE – ORL (USTP.Region21.OR.ECF@usdoj.gov; jill.kelso@usdoj.gov). Counsel for INKIND CARDS INC., INKIND CREDIT FUND LP., and INKIND WAREHOUSE FACILITY LLC (michael.goldberg@akerman.com; esther.mckean@akerman.com)

I FURTHER CERTIFY that on May 1, 2026, I caused a true and correct copy of the foregoing to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon and/or via FedEx Overnight (as noted) upon:

| | |
|---|---|
| DEBTORS<br>ATTN: MR. THOMAS AVALLONE, MGR<br>4700 MILLENIA BLVD, STE 400<br>ORLANDO, FL 32839 | INKIND CREDIT FUND LP<br>ATTN: ANDREW HARRIS, CRO<br>600 CONGRESS AVENUE, SUITE 1700<br>AUSTIN, TX 78701 |
| INKIND CARDS, INC.<br>ATTN: ANDREW HARRIS, CRO<br>600 CONGRESS AVENUE, SUITE 1700<br>AUSTIN, TX 78701 | INKIND WAREHOUSE FACILITY, LLC<br>ATTN: ANDREW HARRIS, CRO<br>600 CONGRESS AVENUE, SUITE 1700<br>AUSTIN, TX 78701 |

*/s/ Wendy Cramer Townsend*
Wendy Cramer Townsend